## ALI v CITY OF DETROIT

Docket Nos. 179412, 179556, 180067. Submitted June 13, 1996, at Detroit. Decided September 3, 1996, at 9:05 A.M. Leave to appeal sought.

Mohammed and Maria Ali brought an action in the Wayne Circuit Court against the City of Detroit, the Suburban Mobility Authority for Regional Transportation (SMART), the City of Dearborn, and others, alleging negligence in connection with the collapse of a bus passenger shelter on Mohammed Ali. The court, John R. Kirwan, J., denied motions by the cities and SMART for summary disposition based on governmental immunity. The cities and SMART appealed separately by leave granted, and their appeals were consolidated.

The Court of Appeals *held*:

1. The trial court correctly determined that the shelter was a building for purposes of the public building exception to governmental immunity. MCL 691.1406; MSA 3.996(106). The shelter meets dictionary definitions of the term "building."

2. The trial court correctly concluded that there remained genuine issues of material fact concerning whether SMART owned the shelter and whether the City of Detroit controlled the shelter such that they may be held liable under the public building exception on the basis of ownership or control of the shelter.

3. There remains a genuine issue of fact concerning whether the City of Detroit and SMART had constructive knowledge of the defective condition of the shelter such that they may be held liable under the public building exception.

4. Because it was first raised on appeal, the City of Detroit's claim that the plaintiffs failed to provide timely notice of the accident, notice required by MCL 691.1406; MSA 3.996(106), need not be reviewed.

5. SMART, which claimed to be a contractor with respect to the shelter, is not protected by the statute of repose, MCL 600.5839(1); MSA 27A.5839(1), against the plaintiffs' action. The statute shields architects, engineers, and contractors from stale claims and relieves them of open-ended liability for defects in workmanship. In this case, SMART's alleged liability arises out of its ownership or control of the shelter, without regard to whether the shelter's

defective condition arose because of improper design, faulty construction, or absence of safety devices.

6. The duty of the City of Dearborn to maintain highways in reasonable repair extends to sidewalks, but not to bus passenger shelters on sidewalks. The highway exception to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1), must be narrowly construed, and bus passenger shelters on sidewalks, as freestanding structures, are not natural extensions of sidewalks but are linked with sidewalks solely by their placement.

7. The failure by the City of Dearborn to exercise powers granted by MCL 247.334; MSA 9.391(4) for the supervision of the construction and maintenance of the shelter does not give rise to liability under the public building exception on the part of the City of Dearborn. Liability under the exception arises out of the ownership or control of a public building. Evidence indicating that the City of Dearborn owned or controlled the shelter was not presented in this case.

Denial of summary disposition for City of Detroit and SMART affirmed; denial of summary disposition for City of Dearborn reversed; case remanded.

1. GOVERNMENTAL IMMUNITY — PUBLIC BUILDING EXCEPTION.

A claim under the public building exception to governmental immunity requires proof by the plaintiff that a governmental agency is involved, the public building in question is open for use by members of the public, a dangerous or defective condition of the public building itself exists, the governmental agency had actual or constructive knowledge of the alleged defect, and the governmental agency failed to remedy the alleged defective condition after a reasonable period (MCL 691.1406; MSA 3.996[106]).

2. GOVERNMENTAL IMMUNITY — PUBLIC BUILDING EXCEPTION — BUS PASSENGER SHELTERS.

A bus passenger shelter is a building for which a governmental agency that owns or controls the shelter may, under the public building exception to governmental immunity, be held liable for bodily injury or property damage resulting from a dangerous or defective condition of the shelter (MCL 691.1406; MSA 3.996[106]).

3. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — MUNICIPALITIES — SIDEWALKS — BUS PASSENGER SHELTERS.

A municipality's duty to maintain highways in reasonable repair, a breach of which gives rise to liability under the highway exception to governmental liability, extends to sidewalks but not to bus passenger shelters on sidewalks (MCL 691.1402[1]; MSA 3.996[102][1]).

4. GOVERNMENTAL IMMUNITY — PUBLIC BUILDING EXCEPTION — BUS PASSENGER SHELTERS.

> Failure by a municipality to exercise statutory powers of supervision over the construction and maintenance of a bus passenger shelter upon a highway does not give rise to liability under the public building exception to governmental immunity where the municipality does not own or control the shelter (MCL 247.334, 691.1406; MSA 9.391[4], 3.996[106]).

*Donald M. Fulkerson,* for Mohammed and Maria Ali.

*Linda D. Fegins,* Principal Assistant Corporation Counsel, for City of Detroit.

*Laurie M. Sabon,* for City of Dearborn.

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Jerome R. Watson, Irene Bruce Hathaway,* and *Brian K. Telfair*), for Suburban Mobility Authority for Regional Transportation.

Before: MICHAEL J. KELLY, P.J., and HOOD and J. L. MARTLEW,* JJ.

PER CURIAM. In this negligence action, defendants City of Detroit and its departments (Docket No. 179412), Suburban Mobility Authority for Regional Transportation (SMART) (Docket No. 180067), and City of Dearborn (Docket No. 179556) appeal by leave granted orders denying their respective motions for summary disposition under MCR 2.116(C)(7) and (C)(10) pursuant to governmental immunity. These appeals have been consolidated. We affirm with respect to defendants City of Detroit and SMART, reverse with respect to City of Dearborn, and remand for further proceedings.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendants City of Detroit and SMART argue that the trial court erred in denying their respective motions for summary disposition based on governmental immunity, because the public building exception, MCL 691.1406; MSA 3.996(106), does not govern this case. We disagree.

The Supreme Court in *Jackson v Detroit*, 449 Mich 420, 428; 537 NW2d 151 (1995), citing *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 421; 487 NW2d 106 (1992), stated that

> a five part test determines whether the public building exception governs a particular case. To fall within the narrow confines of the exception, a plaintiff must prove that 1) a governmental agency is involved, 2) the public building in question is open for use by members of the public, 3) a dangerous or defective condition of the public building itself exists, 4) the governmental agency had actual or constructive knowledge of the alleged defect, and 5) the governmental agency failed to remedy the alleged defective condition after a reasonable period of time.

Defendants initially contend that the bus passenger shelter that collapsed on plaintiff Mohammed Ali was not a building for purposes of the exception. Because the term "building" is not defined in the statute, we give it its plain and ordinary meaning, and consult dictionary definitions. *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 463; 540 NW2d 693 (1995). "Building" is defined as a "relatively permanent, essentially boxlike construction having a roof and used for any of a wide variety of activities, as living, entertaining, or manufacturing," *The Random House College Dictionary: Revised Edition* (1984), and a "structure designed for habitation, shelter, storage, trade, manufacturing, religion, business, educa-

tion and the like. A structure or edifice enclosing a space within its walls, and usually, but not necessarily covered with a roof." Black's Law Dictionary (5th ed). Considering these definitions, we conclude that the bus passenger shelter was a building. The shelter was a walled structure made of plexiglas and steel and was designed to protect people from inclement weather.

Our holding in *Freedman v Oak Park*, 170 Mich App 349; 427 NW2d 557 (1988), was based on facts that are different from those in the present case. In *Freedman*, we held that a "park bench shelter" was not a building for the purpose of the exception. Unlike the present case involving a walled structure specifically designed as a permanent shelter, the shelter in *Freedman* was merely a portable bench with a roof over it. We also decline plaintiffs' invitation to adopt the definition of "building" contained in the State Construction Code Act, MCL 125.1502(1)(f); MSA 5.2949(2)(1)(f). That definition is broad enough to encompass the structure found not to be a building in *Freedman, supra*. Moreover, the Legislature did not intend an expansive reading of the public building exception. *Reardon v Dep't of Mental Health*, 430 Mich 398, 409; 424 NW2d 248 (1988). In summary, giving the term "building" its ordinary meaning, we find that the trial court correctly found that the bus passenger shelter was a building for purposes of the public building exception to governmental immunity.

Defendants City of Detroit and SMART next argue that the trial court erred in denying their respective motions, because there was no issue of fact regarding whether they owned or controlled the shelter. We disagree. In order to be liable under the public building

exception to governmental immunity, the agency must first be shown to be "an owner, a lessee, or in control of the premises." *Mitchell v Dep't of Corrections,* 113 Mich App 739, 743; 318 NW2d 507 (1982). Upon review of the record, we find factual issues regarding whether SMART was the owner of the shelter and whether the City of Detroit controlled the shelter. SMART constructed the shelter in 1978, used it until 1983, and repaired it in 1988.[1] There is no evidence that SMART relinquished ownership. With respect to the City of Detroit, there is no evidence that it owned the shelter, but its control over the shelter may be inferred from evidence that its buses stopped at the shelter over one hundred times a day and its employees were at the scene of the accident, surveying the wreckage, the day after the shelter collapsed.

Defendants City of Detroit and SMART also contend that summary disposition was appropriate because they did not have actual or constructive notice of the defect in the bus passenger shelter. Although the trial court did not address this argument, we consider it because it presents a question of law and the facts necessary for its resolution have been presented. *Detroit v Dep't of Social Services,* 197 Mich App 146, 158; 494 NW2d 805 (1992). In order for the public building exception to governmental immunity to apply, the governmental agency must have actual or constructive knowledge of the defect. *Jackson, supra* at 428. Constructive notice is demonstrated by showing that the agency should have discovered the defect

---

[1] SMART's contention that it did not own the shelter because it had no right of way on the land upon which the shelter was constructed is without merit. By statute, SMART was granted the opportunity to enter upon, construct, and maintain the shelter. MCL 247.332; MSA 9.391(2).

in the exercise of reasonable diligence. *Peterson v Dep't of Transportation*, 154 Mich App 790, 795; 399 NW2d 414 (1986). Upon review of the deposition testimony of plaintiffs' experts, we conclude that there is an issue of fact concerning defendants' constructive knowledge of the defect. A complete reading of that testimony reveals that the experts testified that a reasonable maintenance and inspection schedule would have resulted in the discovery of the shelter's instability and prompted its repair.

Defendant City of Detroit contends that plaintiffs' claims are barred because they failed to provide timely notice of the accident, as required by MCL 691.1406; MSA 3.996(106). This issue was not raised in the lower court. Issues first raised on appeal are ordinarily not subject to review. *Michigan Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 167; 533 NW2d 339 (1995). There exist no exigent circumstances in this case that require our review of this issue. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234, n 23; 507 NW2d 422 (1993).

Defendant SMART additionally argues that the statute of repose, MCL 600.5839(1); MSA 27A.5839(1), bars plaintiffs' claims arising out of the design, testing, assembly, and installation of the shelter because SMART is a "contractor" for purposes of the statute. Although the trial court did not address this argument, we consider it because it presents a question of law and the facts necessary for its resolution have been presented. *Dep't of Social Services, supra* at 158. We hold that SMART is not protected by the statute. The purpose of the statute of repose is to shield architects, engineers, and contractors from stale

claims and relieve them of open-ended liability for defects in workmanship. *Witherspoon v Guilford*, 203 Mich App 240, 245-247; 511 NW2d 720 (1994). As demonstrated by the fact that the repose period begins to run from "the time of occupancy of the completed improvement, use, or acceptance of the improvement," MCL 600.5839(1); MSA 27A.5839(1), the statute is not designed to protect owners of the property, building, or improvement. Defendant SMART's duty arises from its ownership or control over the building, without regard to whether "the condition arose because of improper design, faulty construction, or absence of safety devices." *Wade v Dep't of Corrections*, 439 Mich 158, 168; 483 NW2d 26 (1992). Accordingly, we conclude that the trial court properly denied defendants City of Detroit's and SMART's motions for summary disposition.

Defendant City of Dearborn argues that the trial court improperly denied its motion for summary disposition, because plaintiffs' claims do not fall within the highway exception to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1). We agree. Because the City of Dearborn is a municipality, its duty with regard to a highway extends to the sidewalk. *Cox v Dearborn Heights*, 210 Mich App 389, 393; 534 NW2d 135 (1995). Plaintiffs contend that because the public building exception to governmental immunity has been construed to include fixtures, *Velmer v Baraga Area Schools*, 430 Mich 385; 424 NW2d 770 (1988), we should likewise construe the highway exception to include fixtures attached to the sidewalk. We decline to do so. The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *Musulin v Univ of Michi-*

*gan Bd of Regents*, 214 Mich App 277; 543 NW2d 337 (1995). The Legislature's exclusion of light poles and trees from the scope of the highway exception, MCL 691.1401(e); MSA 3.996(101)(e), evinces its intent that the exception not include fixtures. In *Messecar v Garden City*, 172 Mich App 519, 522; 432 NW2d 311 (1988), we held that a municipality was liable for the defective construction and maintenance of a sidewalk and berm that produced the drop-off where a pedestrian fell. Unlike a berm, which can be considered a natural extension of the sidewalk, a bus passenger shelter is a freestanding structure that is linked with the sidewalk solely by its placement. Narrowly construing the highway exception, we conclude that it does not encompass bus passenger shelters that are attached to the sidewalk. *Scheuerman v Dep't of Transportation*, 434 Mich 619; 456 NW2d 66 (1990).

Plaintiffs additionally argue that the City of Dearborn is liable under the public building exception because it had a duty under MCL 247.334; MSA 9.391(4) to supervise the construction and maintenance of the shelter. The statute, however, does not impose a duty, but merely gives municipalities power to supervise construction and maintenance. Liability for a defect in a public building is imposed by the public building exception to governmental immunity, MCL 691.1406; MSA 3.996(106), and arises out of the ownership or control of the building. *Wade, supra* at 168. Although defendant City of Dearborn had the power to supervise the maintenance of the shelter, there is no evidence in the record that it owned or controlled the shelter. Accordingly, we find that plaintiffs' claims do not fall within the public building exception to governmental immunity. *Mitchell, supra*

at 743. Because plaintiffs' claims against the City of Dearborn do not fall within either the highway exception or the public building exception, we conclude that the trial court erred in denying defendant City of Dearborn's motion for summary disposition.

Affirmed in Docket Nos. 179412 and 180067, reversed in Docket No. 179556, and remanded. We do not retain jurisdiction.