# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL PITTS,

        Plaintiff-Appellee,

v

CITY OF DEARBORN,

        Defendant-Appellant.

UNPUBLISHED
June 21, 2018

No. 336530
Wayne Circuit Court
LC No. 15-005577-NO

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

In this case involving a trip and fall, defendant, the City of Dearborn, appeals as of right the trial court's order denying the City's motion to dismiss plaintiff Carol Pitts' claim on the basis of governmental immunity, MCR 2.116(C)(7). On appeal, the City claims that the trial court erred when it determined that plaintiff's fall occurred on a highway as defined in MCL 691.1402(1), the highway exception to governmental immunity. We affirm.

On May 20, 2013, plaintiff left her home located at 3354 Grindley Park Street in the City of Dearborn and got into her car, which was parked in the driveway of her home. She moved her car from the driveway to the curb area on Grindley Park Street directly in front of her home. She got out of her vehicle and as she was walking in the street back towards her driveway, she tripped over uneven and crumbling asphalt located in the street next to the curb and fell down, fracturing her left wrist.

Grindley Park Street ("Grindley Park") is a residential street in the City of Dearborn that runs north and south. Parking is permitted on both sides of Grindley Park, but there are no pavement markings or painted lines to designate at what point at the sides of the street the parking area begins. There are no marked travel lanes at all on Grindley Park; there is no center line dividing the traffic that goes northbound and southbound. In essence, Grindley Park is a blank thoroughfare with no painted lines at all delineating the flow of traffic and/or parking.

Plaintiff sued defendant alleging that defendant City was negligent in failing to maintain, correct, and repair the dangerous condition of eroded pavement on Grindley Park at the area where she fell. Plaintiff also averred that defendant was not immune on the basis of governmental immunity. In its responsive pleadings, defendant raised the defense of governmental immunity. During the course of the proceedings, defendant filed an emergency

-1-

motion to amend the court's scheduling order following publication of *Yono v Dep't of Transp*, 499 Mich 636; 885 NW2d 445 (2016), in which the Supreme Court addressed the scope of the highway exception to governmental immunity where parking spaces are involved. The court granted defendant's emergency motion and defendant subsequently filed a motion for summary disposition pursuant to MCR 2.116(C)(7).

The trial court denied defendant's motion. It found *Yono* to be dispositive, and held that under *Yono*, the City was not entitled to summary disposition because the area where plaintiff tripped and fell was within the improved portion of the highway designed for vehicular travel.

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). The availability of governmental immunity is a question of law, which is reviewed de novo. *Pierce v City of Lansing*, 265 Mich App 174, 176; 694 NW2d 65 (2005), citing *Mack v City of Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002). Under MCR 2.116(C)(7), summary disposition is permitted when a claim is barred by immunity granted by law. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). In reviewing a motion under MCR 2.116(C)(7), this Court must accept as true all of the plaintiff's well-pleaded factual allegations and construe them in favor of the plaintiff, unless disputed by documentary evidence submitted by the moving party. *Dextrom*, 287 Mich App at 428; *Pierce*, 265 Mich App at 177. The court must consider any affidavits, depositions, admissions, or other documentary evidence submitted, and the court must determine whether there are any genuine issues of material fact. *Dextrom*, 287 Mich App at 429. If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law for the court. *Id*. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. *Id*. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Under Michigan's governmental tort liability act (GTLA), MCL 691.1401 *et seq*., governmental agencies are immune from tort liability when engaged in a governmental function. There are several statutory exceptions to the broad statutory immunity that permit a plaintiff to pursue a claim against a governmental agency. This case involves the highway exception, MCL 691.1402. Under this exception, within certain parameters, governmental agencies are liable for injuries that occur on roads and highways. MCL 691.1402 states:

> (1) Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency . . . . Except as provided in section 2a, the duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the **improved portion of the highway designed for vehicular travel** and does not include sidewalks, trailways, crosswalks or any

-2-

other installation outside of the **improved portion of the highway designed for vehicular travel.** [Emphasis added.]

This case involves specifically the fourth sentence of MCL 691.1402(1). The question is whether the area of Grindley Park where plaintiff tripped, which is close to the curb and which is occasionally used for parking, is the improved portion of the street "designed for vehicular travel." If it is, then the City is not immune from liability. In making this determination, it must be kept in mind that the immunity conferred upon governmental agencies is broad, and the statutory exceptions thereto (such as the highway exception) are to be narrowly construed. *Robinson v Detroit*, 462 Mich 439, 455; 613 NW2d 307 (2000); *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000).

In *Yono*, the Michigan Supreme Court addressed the highway exception to governmental immunity in the context of parking spaces at the side of a road. In *Yono*, the area in question consisted of some parallel parking spaces at the right side of northbound M-22 in the village of Suttons Bay. These spaces were directly in front of businesses in the business district of the village. The plaintiff was injured when she was returning to her vehicle, which was parked in one of the parallel parking spaces, and she accidentally stepped into a depression in the roadbed in the parallel parking space. The parallel parking spaces were specifically designated by painted lines marking the outline of the parking spots. The plaintiff filed suit against the Michigan Department of Transportation ("MDOT"), and MDOT filed a motion for summary disposition under MCL 691.1402(1).

At the outset of the Michigan Supreme Court's opinion, the Supreme Court stated that the case required the Supreme Court "to determine whether a lane of designated, curbside parallel-parking spaces is designed for vehicular travel within the meaning of the highway exception [MCL 69402(1)]." *Yono*, 499 Mich at 650. In its analysis, the Supreme Court cautioned against confusing the potential *uses* that the roadway could support with the activity that its *design was intended to accomplish. Id.* The Court stated that the latter is the proper inquiry to make in each case. In addition, the question is what the area was designed for *at the time of the injury*, not at some time in the past. With respect to the parallel-parking spaces at issue, the Court stated:

> The parties do not dispute that the area at issue in this case was specifically marked as a parallel-parking lane at the time of the alleged injury. . . . Although some lanes on a highway might be designed for dual purposes, the only traffic-control devices present in the lane at issue in this case indicate that it was designed to be used as a parallel-parking lane. Although plaintiff's expert opined that drivers sometimes travel along the parallel-parking lane when it is convenient to do so, the evidence presented regarding the lane's design—the paint delineating the individual parallel-parking spaces—showed a parallel-parking lane, not a travel lane. [*Id*., 653.]

The Michigan Supreme Court held that the area where the plaintiff fell, which consisted of clearly marked parallel parking spaces, was not "designed for vehicular travel" and thus, did not come within the MCL 691.1402(1) highway exception for immunity purposes. Therefore, MDOT was entitled to summary disposition.

Important to this case, the Supreme Court recognized that some cases would not be so clear cut. The Supreme Court recognized that some parts of a roadway can serve a dual purpose—both parking and travelling. To this point, the Court stated:

> Our holding does not suggest that the highway exception requires that the area in question be designed exclusively for vehicular travel. For example, signage might indicate particular hours during which a designated parking lane is to be used as an additional travel lane. **Or a street in a residential neighborhood, with no designated parking lane, might be designed for both curbside parking and vehicular travel.** In this case, however, the lane was designated by the paint markings as a parking area, with no indication that it was also designed for vehicular travel. Accordingly, plaintiff cannot fit these facts into the narrow confines of the highway exception to GTLA. [*Id.* at 656-657.]

In determining whether defendant City is entitled to summary disposition in this case, the following documentary evidence that defendant relied on in its motion must be analyzed.

1.     Affidavit of M. Yunus Patel, the City Engineer. In this affidavit, Mr. Patel avers:

"6. The area where Plaintiff's accident occurred was designed for the parking of vehicles. Parking is allowed on both sides of Grindley Park in this location."

2.     Two photos of Grindley Park in front of plaintiff's house, looking south and north, taken in September 2013. These photos show the general nature and the width of Grindley Park, but nothing more.

3.     Two photos of Grindley Park taken on July 14, 2014. These photos show two cars parked on the east and west side of Grindley Park.

4.     Aerial photo of Grindley Park taken in 2016. This photo shows two cars parked at the side of the street.

5.     Four earlier aerial photos of Grindley Park taken in 1978, 1998, and 2011. All of these photos show a few cars parked at the side of Grindley Park.

City Manager Patel's affidavit does not support summary disposition for Defendant. Although Mr. Patel avers that the sides of Grindley Park were "designed for parking," there is no foundation for this statement. Mr. Patel cites no study, drawing, map, or any written historical or current city, county, or state document that forms the basis of his opinion. He does not state that he participated in or had knowledge of the actual design of the section of Grindley Park where plaintiff fell, or anywhere along that stretch of Grindley Park. Moreover, the statement that the curbsides of Grindley Park were designed for parking does not rule out that they were also designed for vehicular travel.

As to the photographs of Grindley Park depicting cars parked intermittently at the curbsides, while these photos show that some vehicles occasionally park at the side of the street, this does not counter the point, made by the Supreme Court in *Yono,* that a road's current design can be for a dual purpose, i.e., both parking and vehicular travel. The *Yono* Court implied that in

such a dual-use situation, the highway exception would still apply. Defendant did not counter the fact that Grindley Park, which has no clearly delineated parking lane designated by painted lines or signage, is designed for both curbside parking and vehicular travel. Plaintiff provided evidence that vehicular travel occurs across the entire width of Grindley Park. She submitted four screen shots of a video that showed a school bus and a Federal Express truck traversing the area next to the curb on Grindley Park near her home. She also attached her affidavit and one from her husband. They attested that they had seen many other vehicles drive near the curb on Grindley Park, including normal traffic, garbage trucks, mail trucks and Federal express drivers.

The City claims that the use of the curb areas of Grindley Park by a Federal Express truck, a mail truck, and a school bus are "only momentary" uses, similar to the momentary swerving onto the shoulder of the highway at issue in *Grimes v Dep't of Transp*, 475 Mich 72; 715 NW2d 275 (2006). We disagree. When a motorist momentarily swerves onto the shoulder of a highway as the driver did in *Grimes*, it is an unintentional emergency movement. The driver knows that the shoulder is not the usual driving area and utilizes it only for emergency purposes, such as to avoid an accident. In contrast, there is nothing in the curb area of a residential street such as Grindley Park that evidences that it is a parking area only. There are no markings at all that distinguish it from the travel part of the road or that convey that the area is for parking only.

At the motion hearing below, the City also pointed to MCL 257.637(2), which states:

> The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting the overtaking and passing in safety. The driver of a vehicle **shall not overtake and pass another vehicle upon the right by driving off the pavement or main-traveled portion of the roadway.** [Emphasis added.]

MCL 257.637(2) is part of the Motor Vehicle Code, which contains a multitude of statutes including statutes imposing speed limits and setting forth other driving rules. Subsection (3) of MCL 257.637 states that a violation of MCL 257.637 is a civil infraction. The City's argument on the applicability of this statute to this case is not persuasive. The statute sets forth safe driving laws, the violation of which are punishable. It does not speak to whether a part of a residential street is designed for parking only.

In sum, this case is distinguishable from *Yono*. In *Yono* there were highly visible painted lines evidencing that the area in question was designed strictly to be a parallel-parking area. In contrast, there were no painted lines or any other distinguishing markings delineating the area next to the curb as being solely for parking. The facts of this case fall squarely within the Supreme Court's statement in *Yono* regarding dual-use roads. Therefore, the trial court did not err in denying defendant's motion for summary disposition pursuant to MCR 2.116(C)(7).

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood